**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AL "BUBBA" BAKER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RASTELLI FOODS LLC, *et al.*, <br><br> Defendants. | Case No. 24–cv–08882–ESK–AMD <br><br><br> OPINION |

**KIEL, U.S.D.J.**

After years of litigation between the parties across two separate dockets, plaintiffs step to the other side of the "v" in this case.   Plaintiffs represent that they are the inventors of a patented process for removing the bones from pork ribs.   They allege that defendants have infringed on their patents—and breached contractual obligations—by marketing and selling competing products.   But plaintiffs concede that the patents have been assigned to a previously dismissed limited liability company.   In other words, if there is a bone to be picked with defendants in this case, plaintiffs may not be the ones to do so.   Because plaintiffs are without standing to press their patent claims, and the Court declines to exercise jurisdiction over their state law claims, the motions to dismiss at ECF No. 18 and ECF No. 26 will be granted.

## I.   BACKGROUND

This decision does not reach the merits of plaintiffs' claims.   References to the complaint and the parties' arguments are therefore limited to those necessary to support the Court's disposition.

## A.  The Complaint

Plaintiff Al "Bubba" Baker (Al) is a Florida citizen and co-inventor of Bubba's Boneless Ribs.  (ECF No. 1 (Compl.) p. 1.)  Plaintiff Brittani Bo Baker is Al's daughter, a California citizen, and co-inventor of Bubba's Boneless Ribs. (*Id.*)  Plaintiffs represent that former co-plaintiff JabezBaker LLC, an Ohio limited liability company, holds exclusive ownership of the patents relating to the production of Bubba's Boneless Ribs, but they retain patent rights.  (*Id.*)

Defendant Rastelli Foods LLC is a limited liability company involved in the production, marketing, and sale of Bubba's Boneless Ribs.  (*Id.* p. 2.) Plaintiffs allege that Rastelli Foods has engaged in the unauthorized sale of infringing products under the name "Rastelli's Boneless Ribs." (*Id.*) Raymond Rastelli Jr. and Raymond Rastelli III are New Jersey citizens who are the co-founder and executive, respectively, of Rastelli Foods. (*Id.*) Defendant Rastelli Partners LLC is a limited liability company responsible for the distribution of Bubba's Boneless Ribs and has also allegedly engaged in the unauthorized commercialization of competing products.  (*Id.*)  Defendant Rastelli Brothers Inc. is a New Jersey corporation that has also allegedly participated in the unauthorized sale of competing products.  (*Id.*)  These defendants will collectively be referred to as "Rastelli Defendants" in this opinion.

Defendant Daymond John is a Florida citizen, who has actively participated in the commercialization of Bubba's Boneless Ribs and who has allegedly been paid for the unauthorized sale of competing products.  (*Id.*) Through defendant DF Ventures LLC, John is a limited partner in FOF Bakers LLC.  (*Id.*)  Defendant Lawrence Fox is general counsel for DF Ventures and has purportedly played a role in the unauthorized commercialization of competing products and plaintiffs' exclusion from key business decisions.  (*Id.*)

These defendants will collectively be referred to as "DF Defendants" in this opinion.

Plaintiffs developed a process for removing bones from pork ribs as reflected in a pair of patents issued in 2010 and 2011. (*Id.* p.3.) Those patents were assigned to JabezBaker on November 7, 2015, with JabezBaker retaining full ownership until FOF Bakers LLC reached $30 million in sales. (*Id.*) Plaintiffs formed FOF Bakers to commercialize Bubba's Boneless Ribs and, in 2019, plaintiffs, Rastelli Brothers, and DF Ventures entered into a licensing agreement whereby Rastelli Brothers was granted exclusive rights to manufacture, package, distribute, and market Bubba's Boneless Ribs in exchange for royalties and other benefits. (*Id.* p.4.)

A 2019 settlement agreement reaffirmed the licensing arrangement. (*Id.*) It further provided that defendants were to refrain from competing with licensed products, John was to promote Bubba's Boneless Ribs, and Al was to be included in marketing efforts. (*Id.* pp.4, 5.)

In April 2024, defendants purportedly began promoting and selling Bubba's Boneless Ribs under the Rastelli's Boneless Ribs name on QVC and other platforms without plaintiffs' consent. (*Id.* p.7.) Two segments that ran in April 2024 led to at least 1,900 products sold and approximately $237,500 in revenue, in addition to diverting consumers from Bubba's Boneless Ribs. (*Id.* pp.7, 8.) Plaintiffs allege that these sales breached the 2019 settlement agreement all while they did not receive royalty payments from 2020 to June 2023. (*Id.* pp.13, 16.) Defendants have further consistently concealed sales information, according to plaintiffs. (*Id.* p.17.)[1]

---

[1] Plaintiffs refer to then-pending motions to appoint a receiver and a forensic accountant and to block the creation of a trust. (Compl. pp.24, 25.) These motions have since been denied. (Docket No. 23–02967; ECF No. 166; ECF No. 167; Docket No. 23–03126, ECF No. 155; ECF No. 156.)

In addition to the sales themselves, plaintiffs contend that commercialization of Rastelli's Boneless Ribs has created confusion in the marketplace.   (*Id.* p. 7.)   Defendants purportedly misrepresented during QVC appearances that the patented process belonged to Rastelli Defendants.   (*Id.* pp. 7, 12, 13.)

Plaintiffs have further been excluded from key communications and decision-making despite requests to be included. (*Id.* pp. 8–10.)   These exclusions highlight defendants' prioritization of their own ventures by undermining plaintiffs' business relationships and diverting customers to Rastelli Defendants' businesses for their own profit.   (*Id.* pp. 10–12.)

Plaintiffs seek relief including compensatory, treble, and punitive damages; pre- and post-judgment interest; and appointment of a receiver and forensic accountant of their choice at defendants' cost.   (*Id.* pp. 25, 26.)   Based on their estimates of valuation and damages, treble damages could increase a potential award to $120 million, according to plaintiffs.   (*Id.* p. 19.)

### B.    Procedural History

This case was filed by plaintiffs, proceeding *pro se*, on August 30, 2024. (*See generally id.*)   Shortly thereafter, I entered an order stating that JabezBaker could not proceed *pro se* and provided plaintiffs 30 days to retain counsel.   (ECF No. 5 (Sept. 5, 2024 Order).)   I denied plaintiffs' motion for an extension of time to retain counsel and dismissed JabezBaker's claims without prejudice. (ECF No. 9 (Oct. 28, 2024 Order).)   I further stated that "JabezBaker may move to reinstate its claims upon its retention of counsel." (*Id.*)   To date, plaintiffs have elected not to retain counsel for JabezBaker.

Plaintiffs moved to file an amended complaint on November 27, 2024 (ECF No. 10) and filed a proposed amended complaint (ECF No. 11).   Magistrate Judge Ann Marie Donio reasoned that, because defendants had not yet responded to the original complaint, plaintiffs could amend without leave.

4

(ECF No. 15 p. 3.)   Plaintiffs were ordered by Judge Donio to "file an amended complaint in accordance with Federal Rule of Civil Procedure [(Rule)] 15(a) and … serve any such amended complaint in accordance with the Federal Rules of Civil Procedure."   (*Id.* p. 5.)   Plaintiffs made no such subsequent filing.   It is for this reason that the Court interprets the original complaint at ECF No. 1 to be the operative complaint.[2]

The pending motions followed.   (ECF No. 18; ECF No. 26.)   Plaintiffs have filed oppositions to the motions (ECF No. 21 (Pls.' Opp'n Br. – Rastelli); ECF No. 28 (Pls.' Opp'n Br. – DF)) to which defendants have replied (ECF No. 22 (Rastelli Defs.' Reply Br.); ECF No. 29).

## II.   MOTIONS TO DISMISS

Prior to the filing of a responsive pleading, a defendant may move to dismiss a complaint for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted.   *See* Fed. R. Civ. P. 12(b)(1), (6).   To survive dismissal under Rule 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" *Doe v. Princeton Univ.*, 30 F.4th 335, 341 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)), and—accepting the plaintiff's factual assertions, but not legal conclusions, as true—"'plausibly suggest[]' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged,'" *id.* at 342 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   Courts further evaluate the sufficiency of a complaint by "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking

---

[2] The Court has nonetheless reviewed the proposed amended complaint at ECF No. 11.   Because its decision rests on standing and jurisdictional considerations—and these same considerations exist in both the complaint and proposed amended complaint—the Court finds that disposition does not turn on whether it considers the original or proposed amended complaint as operative.

at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Subject matter jurisdiction may be attacked facially or factually through a motion to dismiss pursuant to Rule 12(b)(1).  *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).   A factual attack challenges the allegations underlying the complaint's assertion of jurisdiction and permits the court to consider and weigh evidence outside of the pleadings without presuming the truthfulness of the allegations.   *Id.*   A facial attack challenges jurisdiction without contesting the factual allegations and, similar to a Rule 12(b)(6) motion, requires the court to consider the complaint's allegations as true.   *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 n.7 (3d Cir. 2024).

Where, as here, a defendant contends that the plaintiff lacks standing, courts must address such challenges before reaching the merits because "[s]tanding is a 'fundamental jurisdictional question.'"   *See Pipito v. Lower Bucks Cnty. Joint Mun. Auth.*, 822 F. App'x 161, 165 (3d Cir. 2020) (quoting *AT&T Commc'ns of N.J., Inc. v. Verizon N.J., Inc.*, 270 F.3d 162, 168 (3d Cir. 2001)).   Federal courts' jurisdiction is limited to cases and controversies, which may exist only if the plaintiff has standing to sue.   *Reading v. N. Hanover Twp.*, 124 F.4th 189, 196 (3d Cir. 2024).   Motions to dismiss for lack of standing are therefore properly brought pursuant to Rule 12(b)(1).   *Huertas*, 120 F.4th at 1174.   "At the pleading stage, to have Article III standing, a litigant invoking the power of a federal court must plausibly allege (i) an injury-in-fact (ii) that is fairly traceable to the conduct of the party sued, and (iii) that is judicially redressable."   *Lutter v. JNESO*, 86 F.4th 111, 124 (3d Cir. 2023).

6

### III.   DISCUSSION

#### A.        Plaintiffs' Patent Claims

Because of the jurisdictional significance of standing and defendants' shared contentions relating to it, I begin there.

Rastelli Defendants submit that plaintiffs are without standing to press their patent infringement claims because only the party holding the patent suffers a legal injury and possesses a right to remedy.   (ECF No. 18–1 (Rastelli Defs.' Mot. Br.) pp. 14, 15.)   Plaintiffs have admitted that the relevant patents have been assigned to JabezBaker, an entity which they cannot represent *pro se*.   (*Id.* pp. 15–17.)   DF Defendants echo that, because JabezBaker is the sole owner of the patents, plaintiffs are without standing to bring their patent claims. (ECF No. 27 p. 8.)   More generally, DF Defendants argue that JabezBaker and FOF Baker are the only true parties to the operating agreement and thus plaintiffs have no standing to sue under the operating or settlement agreements either.   (*Id.* pp. 7, 8.)

Plaintiffs respond that they fall within the zone of interest protected by the Lanham Act[3] as defendants have passed plaintiffs' invention off as their

---

[3] The complaint makes a single reference to the Lanham Act.   (Compl. p. 13.) This reference is made in the context of alleged representations as to the ownership of the patents.   (*Id.* pp. 12, 13.)   I therefore interpret this portion of the complaint—in the context of the complaint as a whole—as seeking to enforce plaintiffs' asserted patent rights.   Even if this interpretation is mistaken, dismissal is nonetheless appropriate.   Claims of trademark infringement, false designation of origin, and unfair competition each require the plaintiff to establish that "(1) their marks are valid and legally protectable; (2) they own the marks; and (3) defendants' use of their marks to identify goods or services is likely to create confusion concerning the origin of the goods or services."   *Medieval Times U.S.A., Inc. v. Medieval Times Performers United*, 695 F. Supp. 3d 593, 599 (D.N.J. 2023).   Plaintiffs do not attempt to plead any of these elements in the complaint.   Insofar as plaintiffs emphasize any potential Lanham Act claim in their opposition, "it is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'"   *Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) (quoting *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

own. (Pls.' Opp'n Br. – Rastelli pp. 5, 6.) As signatories to the 2019 settlement agreement, plaintiffs claim that they also have standing under the contract. (*Id.* pp. 4, 5.) Intangible injuries such as reputational harm are sufficient for Article III standing, according to plaintiffs. (Pls.' Opp'n Br. – DF p. 2.)

I focus here on plaintiffs' patent claims. The Patent Act provides "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. §271(a). To state a claim for direct patent infringement, which plaintiffs appear to attempt, the complaint must (1) name the relevant accused product, (2) describe the alleged infringement in each count, and (3) identify how the accused product infringed on every element of at least one claim in each of the plaintiff's patents. *Miller Indus. Towing Equip. Inc. v. NRC Indus.*, 582 F. Supp. 3d 199, 203 (D.N.J. 2022).

As that third element portends, there is a standing component to patent claims. Patents grant the *patentee*, or their heirs or assigns, the right to exclude others from making, using, offering for sale, or selling the invention or using, offering for sale, or selling products made by a patented process. *See* 35 U.S.C. §154(a)(1); *see also* 35 U.S.C. §281 ("A *patentee* shall have remedy by civil action for infringement of his patent." (emphasis added)). Patent rights are conferred by the Patent Act and therefore "in a patent infringement case, the actual or threatened injury required by Article III exists solely by virtue of the Patent Act." *ChromaDex, Inc. v. Elysium Health, Inc.*, 507 F. Supp. 3d 579, 581–82 (D. Del. 2020). "Constitutional standing to sue for patent infringement is established by ownership of and injury to the exclusionary rights bestowed by the patent grant." *Medtronic Sofamor Danek USA, Inc. v. Globus Med., Inc.*, 637 F. Supp. 2d 290, 299 (E.D. Pa. 2009). It stands to reason, then, that

8

infringement actions "must ordinarily be brought by a party holding 'legal title' to the patent." *Trendx Enters., Inc. v. All-Luminum Prods., Inc.*, 856 F. Supp. 2d 661, 665 (D.N.J. 2012) (quoting *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991)).

An obvious defect now emerges from the complaint. Plaintiffs plead that the relevant patents were assigned to JabezBaker in 2015. (Compl. pp.3, 4.) A copy of the assignment included with the complaint[4] confirms that plaintiffs assigned to JabezBaker "all of [their] worldwide right, title[,] and interest in and to the [p]atents." (ECF No. 1–2.) Plaintiffs identify no other interest in the patents themselves, such as an exclusive license, that may nonetheless confer standing to them. *See Medtronic Sofamor Danek USA, Inc.*, 637 F. Supp. 2d at 299–300.

Plaintiffs instead share important similarities with the plaintiff in *Haddad v. United States*. *See* 127 Fed. Cl. 565 (2016). There, the plaintiff filed a pair of complaints alleging patent infringement by the Transportation Security Administration. *Id.* at 567. The government moved to dismiss, arguing that the plaintiff had transferred all of his patent rights to his corporation. *Id.* at 568–69. The court concluded that, assuming that the plaintiff made a valid assignment to his corporation, he lacked standing to sue under the patent absent proof of a subsequent transfer of rights back to him. *Id.* at 570. Dismissal was denied pending proof that patent rights reverted back to the plaintiff. *Id.* The plaintiff later failed to prove that he owned the patent as of the filing of the complaints and the complaints were dismissed for lack of standing. *Haddad v. United States*, 128 Fed. Cl. 373, 374 (2016).

Courts throughout the country have similarly found that the assignor of a patent loses standing to sue for infringement. *See, e.g., Sgromo v. Imperial*

---

[4] I find that I may consider the assignment because it is relied upon by plaintiffs in the complaint. *See Davis*, 824 F.3d at 351 n.22.

9

*Toy LLC*, Case No. 19–00068, 2019 WL 4394565, at *3 (E.D. Tex. Sept. 13, 2019) (concluding that, even if the plaintiff possessed the same rights as the assignor, he lacked standing absent a plausible allegation of current ownership of the patents); *AEM (Holdings), Inc. v. Cooper Indus., Inc.*, Case No. 04–00594, 2005 WL 5950104, at *3 (C.D. Cal. July 12, 2005) ("A patent owner that assigns all of its rights in a patent to another party lacks standing thereafter to assert an infringement claim concerning that patent."). More generally, courts within this District have recognized that it is the plaintiff's burden to establish standing in a patent suit and standing requires enforceable title to the patent at the time the action is initiated. *See, e.g.*, *Abraxis BioScience, Inc. v. Navinta LLC*, Case No. 07–01251, 2009 WL 904043, at *3 (D.N.J. Mar. 30, 2009).

Plaintiffs' challenge joins this line of decisions. This is not an unjust result. JabezBaker, assuming it has not otherwise transferred its rights, has standing to sue for any potential infringement. It just may not do so without licensed counsel. *See Dougherty v. Snyder*, 469 F. App'x 71, 72 (3d Cir. 2012). Plaintiffs are aware of this (Sept. 5, 2024 Order) and have forgone the opportunity to retain counsel and reinstate JabezBaker's claims (Oct. 28, 2024 Order) in favor of their present course. Any impediment to relief, then, falls on their shoulders. Because plaintiffs have assigned their patent rights to a limited liability company for which they refuse to retain counsel, their claims under the Patent Act will be dismissed without prejudice.[5]

---

[5] Dismissals for lack of standing are generally without prejudice. *See Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 209 (3d Cir. 2021). But plaintiffs will not be permitted to file an amended complaint without also meeting additional requirements. Rastelli Defendants have requested that the Court impose a filing injunction on plaintiffs or, in the alternative, prohibit plaintiffs from using artificial intelligence to prepare filings or require that plaintiffs include affidavits with their filings indicating whether they have used artificial intelligence or other assistance. (Rastelli Defs.' Mot. Br. pp. 35–37.) Plaintiffs contend that Rastelli Defendants' request is a distraction intended to avoid accountability by constraining plaintiffs' efforts to enforce their rights. (Pls.' Opp'n Br. – Rastelli p. 10.) Somewhat surprisingly, Rastelli Defendants do not appear to have reviewed the cases cited in the

complaint.    The Court has.    Multiple cases cited by plaintiffs are so inaccurately cited that the Court is unable to locate them, assuming they exist at all.    This represents a separate—and potentially more egregious—issue than Rastelli Defendants' assertion that the sources cited by plaintiffs in their opposition do not support their stated propositions (Rastelli Defs.' Reply Br. pp. 17–19), which itself warrants Court action. Plaintiffs' use of a quotation that does not appear in the cited case is of particular concern as correct use of quotations requires no legal training and a false quotation indicates that plaintiffs have not attempted to assure accuracy in their filings to the Court.    *See Skoorka v. Kean Univ.*, Case No. 16–03842, 2017 WL 6539449, at *3 (D.N.J. Dec. 21, 2017) ("*Pro se* litigants are not shielded from the sanctions offered by Rule 11.").    These are also not isolated incidents.    Under a separate docket, I noted that I was unable to verify cases cited in plaintiffs' moving briefs.    (Case No. 23– 03126, ECF No. 141.)    Plaintiffs were ordered to file PDF copies of each case cited in the briefs.    (*Id.*)    Plaintiffs represented to the Court that the offending briefs contained "inadvertent placeholder references" and requested the opportunity to correct pursuant to Rule 11's safe-harbor provision.    (Case No. 23–03126, ECF No. 146 (Pls.' Resp. to Nov. 6, 2024 Order) p. 1.)    Plaintiffs later filed supplemental counterclaims with at least one unverifiable case citation.    (Docket No. 23–02967, ECF No. 182.)    I advised plaintiffs that I would "continue to verify citations in their papers and that they have an obligation to ensure that the sources they cite exist, are good law, and support the proposition for which they are offered."    (Docket No. 23– 02967, ECF No. 183; Case No. 23–03126, ECF No. 172 (July 15, 2025 Op.) p. 5 n. 2.) Future failures to verify sources were to be met with potential sanctions.    (*Id.*) Plaintiffs have disregarded my warnings.    The Court will not waste its resources ordering plaintiffs to show cause why they should not be sanctioned in a case that may well end with this opinion.    If plaintiffs elect to file an amended complaint—or file any other action in this Court asserting similar claims—they shall provide PDF copies of each case cited both in the new or amended pleading and the original complaint filed here at ECF No. 1.    Plaintiffs shall further highlight in each PDF the text that supports their asserted proposition in the new or amended pleading and supported their proposition in the original complaint.    Any motion to reconsider this decision shall meet the same requirements, limited to the original complaint.    If plaintiffs are unable to produce a cited case or highlight their supported proposition within a producible case, they shall show cause why they should not be sanctioned for their failure to meet their "obligation to ensure that the sources they cite exist, are good law, and support the proposition for which they are offered."    (July 15, 2025 Op. p. 5 n. 2.) If plaintiffs are unable to produce a cited case or highlight their supported proposition and intend to represent to the Court that the error is due to their use of placeholder references (Pls.' Resp. to Nov. 6, 2024 Order p. 1) or filing of a draft, they shall show cause why they should not be sanctioned for repeatedly submitting drafts or filings with placeholder references.    Plaintiffs are advised that their filing of an amended pleading or new complaint under a separate docket without complying with the Court's order may itself be met with sanctions.    *See Mullins v. Duquesne Univ. of the Holy Spirit*, Case No. 25–01366, 2025 WL 3496167, at *3 (W.D. Pa. Dec. 5, 2025) (striking the *pro se* plaintiff's reply brief, requiring the plaintiff to certify whether or not he has

11

### B. Plaintiffs' State Law Claims

In addition to alleged infringement under the Patent Act, plaintiffs assert various state law claims. Though the complaint does not neatly identify the asserted causes of action in separate counts, the Court interprets the complaint as—at the very least—asserting claims of breach of the 2019 settlement agreement and related fraud. Defendants address these causes of action in their moving briefs, but I find that I do not have jurisdiction to consider them.

Plaintiffs assert jurisdiction under both the Patent Act and diversity of citizenship. (Compl. p. 3.) Courts possess diversity jurisdiction in civil actions in which the amount in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332(a). "Jurisdiction under § 1332(a) requires 'complete diversity,' meaning that 'no plaintiff can be a citizen of the same state as any of the defendants.'" *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 346 (3d Cir. 2013) (quoting *Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003)).

Plaintiffs claim that they "and defendants are citizens of different states, ensuring that no plaintiff shares the same state citizenship with any defendant." (Compl. p. 3.) But this assertion is directly contradicted by the two immediately preceding pages in which plaintiffs plead that both Al and John are citizens of Florida. (*Id.* pp. 1, 2.) Complete diversity therefore does not exist and the Court may not consider plaintiffs' state law claims through diversity jurisdiction.

Supplemental jurisdiction is not asserted, but even interpreting the complaint as so asserting, a district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original

---

used artificial intelligence to research or draft future filings, requiring the plaintiff to certify that he has reviewed future filings for accuracy, and warning that further violations would be met with sanctions).

12

jurisdiction." 28 U.S.C. §1367(c)(3). When federal claims are dismissed, district courts may decline to consider state law claims unless judicial economy, convenience, and fairness to the parties justify otherwise. *Chey v. LaBruno*, 608 F. Supp. 3d 161, 188 (D.N.J. 2022). "Where the federal claims are dismissed at an early stage in litigation, courts generally decline to exercise supplemental jurisdiction over state law claims." *Medley v. Atl. Exposition Servs., Inc.*, 550 F. Supp. 3d 170, 203 (D.N.J. 2021).

Because I will dismiss plaintiffs' federal claims at the pleading stage, I find that judicial economy, convenience, and fairness do not support retention of jurisdiction. Plaintiffs' state law claims will be dismissed without prejudice for lack of jurisdiction. If plaintiffs intend to file an amended complaint, or new action asserting similar state law claims, they shall nonetheless comply with the supplemental requirements described above.

## IV.    CONCLUSION

For the foregoing reasons, defendants' motions at ECF No. 18 and ECF No. 26 will be granted. Plaintiffs' complaint is dismissed without prejudice. Plaintiffs will be provided 30 days to file an amended complaint. If plaintiffs elect to file an amended complaint, they shall provide PDF copies of each case cited both in the amended complaint and complaint at ECF No. 1 as well as highlight in each PDF the portions of the cases that support, or supported, plaintiffs' propositions. If plaintiffs are unable to do so, they shall show cause why they should not be sanctioned. An appropriate order accompanies this opinion.

*/s/ Edward S. Kiel*
EDWARD S. KIEL
UNITED STATES DISTRICT JUDGE

Dated:  March 26, 2026

13